TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
:
OPINION        :
:
of       :
:
JOHN K. VAN DE KAMP  :     No. 87-201
Attorney General     :
:    AUGUST 13, 1987
RODNEY O. LILYQUIST  :
Deputy Attorney General  :
:
-----------------------------------------------------------------

THE HONORABLE NORMAN S. WATERS, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Where a local agency imposes fees upon a residential development for the construction of public improvements or facilities, what "utility service fees" may be collected at the time an application for utility service is received?

CONCLUSION

Where a local agency imposes fees upon a residential development for the construction of public improvements or facilities subject to the constraints of Government Code section 53077.5 the "utility service fees" which may be collected at the time an application for utility service is received are the one- time fees imposed to connect a residential development to the utility's facilities or pay for the construction of additional improvements or facilities to repair, improve or increase the capacity of the utility system.

ANALYSIS

Government Code section 53077.5[1] was recently enacted by the Legislature (Stats. 1986, ch. 685, § 1) to provide in part:

"(a) Except as otherwise provided in subdivision (b), any local agency which

---

[1] All section references hereafter to the Government Code are by section number only.

imposes any fees or charges on a residential development for the construction of public improvements or facilities shall not require the payment of those fees or charges, notwithstanding any other provision of law, until the date of the final inspection, or the date the certificate of occupancy is issued, whichever occurs last, provided, that utility service fees may be collected at the time an application for utility service is received. If the residential development contains more than one dwelling, the local agency may determine whether the fees or charges shall be paid on a pro rata basis for each dwelling when it receives its final inspection or certificate of occupancy, whichever occurs last; on a pro rata basis when a certain percentage of the dwellings have received their final inspection or certificate of occupancy, whichever occurs last; or on a lump-sum basis when the last dwelling in the development receives its final inspection or certificate of occupancy, whichever occurs first.

"(b) Notwithstanding subdivision (a), the local agency may require the payment of those fees or charges at an earlier time if (1) the local agency determines that the fees or charges will be collected for public improvements or facilities for which an account has been established and funds appropriated and for which the local agency has adopted a proposed construction schedule or plan prior to final inspection or issuance of the certificate of occupancy or (2) the fees or charges are to reimburse the local agency for expenditures previously made. 'Appropriated,' as used in this subdivision, means authorization by the governing body of the local agency for which the fee is collected to make expenditures and incur obligations for specific purposes.

"(c) 'Local agency,' as used in this section, means a county, city, or city and county, whether general law or chartered, or district. 'District' means an agency of the state, formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries.

"(d) This section applies only to fees collected by a local agency to fund the construction of public improvements or facilities. It does not apply to fees collected to cover the cost of code enforcement or inspection services, or to other fees collected to pay for the cost of enforcement of local ordinances or state law." (Emphasis added.)

The question we are asked is definitional -- what is the meaning of the phrase "utility service fees" as used in the statute? We conclude that it refers to the one-time fees and charges that are made to connect the residential development to the utility's facilities.

In analyzing the issue presented we note that the general purpose of the legislation was explained in the Report of the Senate Local Government Committee as follows:

"<u>Background and Existing Law</u>:

"To help pay for new public works, local officials often impose exactions on builders; requirements to dedicate land or facilities or pay money in lieu of dedication. Some exactions are authorized by specific statutes, such as the Quimby Act (parks) or 'SB 201' (temporary school facilities). Local officials collect other fees based on their general police powers.

"When builders pay development fees for residential projects, local officials must deposit the money in a separate capital facilities account fund and spend it just for the intended purpose. Any interest on these deposits must return to this fund and be spent only on the same purpose (SB 892, L. Greene, 1983).

"Some builders are concerned that local officials require them to pay these fees well in advance of their need. Early payments reduce builders' working capital and may create cash-flow problems. They want to be sure that local governments do not require the payments until they are really needed.

"<u>Proposed Law</u>:

"Assembly Bill 3314 prohibits cities, counties, and special districts from requiring payments for public improvements for residential development projects until the final building inspection or when the certificate of occupancy is issued, whichever is later. A local agency can still require earlier payments if the fee will be spent or appropriated before the project is completed or if the fee is needed to reimburse earlier public improvement costs. Additionally, local officials can collect 'utility service fees' when they receive applications for service. For multiple unit projects, AB 3314 permits a local agency to pro rate its fees or collect them as a lump sum."

We see from the committee report that the purpose of section 53077.5 is to prevent cities, counties and districts which impose fees on new residential developments to fund construction of public improvements and facilities from collecting such fees before the residential development is completed unless the money is needed for such construction before that time. Thus where construction of the public improvement or facility for which the fee is imposed is deferred until after the residential development is completed, the fee cannot be collected from the subdivider or builder before the homes are completed. This opinion is concerned with an exception to this requirement in the case of "utility service fees" set forth in the statute.

Though we are not asked to define the term, utilities include water, gas, electricity, sewers and perhaps some other services provided to residences. (See Cal. Const., art. XII, § 3; Pub. Util. Code, § 216; Civ. Code, § 1882.) Payment for such utilities is of two basic kinds. First, there are one-time fees or charges imposed by the owner of the utility to connect a particular residential development to the system. Such fees are imposed to pay for installing meters, pipes or power lines

to connect the residence to the utility's mains, pipelines or power poles and to fund the construction of improvements or facilities which repair, improve or provide additional capacity to the utility's system whether this is power generation, additional water or gas supply or added disposal plant capacity. Second, there is a recurring charge made periodically (usually monthly) to the owner or person occupying each residence for the utility service provided the residence during the period, often measured by the amount of service provided as indicated on the meter.

It should be noted that section 53077.5 applies only to city, county and district fees and charges and therefore has no application to fees and charges imposed by any private utility company.

Some confusion in the meaning of the "utility service fees" exception in section 53077.5 arises from the use of the word "service." The word "service" is frequently used to describe what the recurring periodic charges made by utilities pay for. However, in the context of section 53077.5 we believe it has another connotation. Section 53077.5 applies only to fees or charges made on a residential development to fund the construction of public improvements or facilities. It has no application to fees to pay for the maintenance and operation of the utility's facilities or to pay for the electricity, water or gas used or for the use of sewage facilities. Further, the section contemplates that such fee or charge is to be paid at one point in time, namely when the residential development is completed or when the improvement is constructed. Thus we conclude that the "utility service fees" referred to in section 53077.5 are the one-time fees imposed to connect the residential development to the utility's facilities or "services." When imposed by a city, county or district providing the utility service in question, such fees are used to construct the public improvements needed to connect the residential development to the utility facilities and to fund the construction of improvements and facilities to repair, improve or provide additional capacity in the system. The same cannot be said of the recurring periodic charges which are used principally to fund the maintenance and operation costs of the utility.

We conclude that where a local agency imposes fees upon a residential development for the construction of public improvements or facilities subject to the constraints of Government Code section 53077.5, the "utility service fees" which may be collected at the time an application for utility service is received are the one-time fees imposed to connect a residential development to the utility's facilities or pay for the construction of additional improvements or facilities to repair, improve or increase the capacity of the utility system.

\* \* \* \* \*

4. 87-201